# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| LAWRENCE RAY DOUGLAS, § | | |
| TDCJ No. 00648044, § | | |
| § | | |
| Petitioner, § | | |
| § | | |
| V. § | W-22-CV-952-ADA | |
| § | | |
| BOBBY LUMPKIN, Director, § | | |
| Texas Department of Criminal Justice, § | | |
| Correctional Institutions Division, § | | |
| § | | |
| Respondent. § | | |

## ORDER

Before the Court are Petitioner Lawrence Ray Douglas's pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1), Respondent Bobby Lumpkin's Answer (ECF No. 20), and Petitioner's Response (ECF No. 30). Petitioner has also filed a Motion for Discovery (ECF No. 11), a Motion for Appointment of Counsel and Funds for an Investigator (ECF No. 19), a Motion for Partial Summary Judgment (ECF No. 31), and a Motion for Free Copies (ECF No. 34). Having reviewed the record and pleadings submitted by the parties, the Court concludes Petitioner's federal habeas corpus petition should be denied under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d). Petitioner's pending motions are also denied.

## **I. Background**

In May 1993, a jury convicted Petitioner of burglary of a habitation and the court sentenced him to forty years imprisonment. *State v. Douglas*, No. 6442 (82nd Dist. Ct., Falls Cnty., Tex. May 6, 1993). (ECF No. 22-1 at 7). Petitioner was incarcerated for this offense until November 12, 2009, when he was released from the Texas Department of Criminal Justice's (TDCJ) custody to parole supervision. (ECF No. 21-1 at 2.) Upon his release, Petitioner was notified of the general conditions of his parole and was instructed not to commit any offenses that may violate state or federal law, and to report as directed and follow all instructions of his parole officer. (ECF No. 22-15 at 7-9.)

However, on November 5, 2020, a warrant was issued for Petitioner's arrest based on two violations of his parole conditions. (*Id.*) After a revocation hearing where Petitioner was found guilty of violating his parole, the Board of Pardons and Paroles (BPP) voted to revoke Petitioner's parole on December 28, 2020, and he was returned to TDCJ custody. (*Id.* at 35.)

Petitioner challenged the revocation of his parole by filing a state habeas corpus application on October 15, 2021, raising the following grounds of relief:

1. He was denied due process of law when his parole was revoked based solely on hearsay testimony.

2. He was denied due process of law and his Sixth Amendment right to question adverse witnesses and to subpoena documentary evidence and recordings.

3. He was due denied due process of law and his Fourth Amendment right to be free from restraints without probable cause.

4. He was denied due process of law and his Fifth Amendment rights when he was subjected to the same violation description twice.

2

5. He was denied due process of law and his Sixth Amendment right to effective assistance of counsel and self-representation.

6. He was denied due process of law and his First Amendment right to a final mitigation hearing.

(ECF No. 22-14 at 5-22.) The Texas Court of Criminal Appeals (TCCA) denied his state application without written order on August 10, 2022. *Ex parte Douglas*, No. WR-32,028-06 (Tex. Crim. App. Aug. 10, 2022). (ECF No. 22-12.)

Petitioner executed his federal habeas petition September 7, 2022, raising the same claims from his state habeas application with the addition of the following claim:

7. He was denied due process when the parole division failed to conduct a revocation hearing in a reasonable amount of time.

(ECF No. 1.) Respondent argues Petitioner's claims are meritless except claim 7, which is unexhausted and therefore procedurally defaulted from federal habeas review. (ECF No. 20.) Petitioner has filed a response along with a Motion to Amend, in which he asks the Court to dismiss claim 6 in his federal petition. (ECF No. 32.) The Court grants the motion and will not consider claim 6 in its review of Petitioner's federal habeas petition.

## II. Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by AEDPA. *See* 28 U.S.C. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2)

3

resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This demanding standard stops just short of imposing a complete bar on federal court re-litigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness always should be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (citing *Williams v. Taylor*, 529 U.S. 362, 409 (2000)). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *Richter*, 562 U.S. at 102. A petitioner must show that the state court's decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (citation omitted). As a result, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011). "'If this standard is difficult to meet—and it is—that is because it

was meant to be.'" *Mejia v. Davis*, 906 F.3d 307, 314 (5th Cir. 2018) (quoting *Burt v. Titlow*, 571 U.S. 12, 20 (2013)).

## III. Analysis

1. Motions for Discovery and Funds for an Investigator

Petitioner has moved for discovery, requesting copies of videos of the incident leading to his parole revocation, along with various other documents and his state habeas application. (ECF No. 11.) He also filed a motion for funds for an investigator and for appointment of counsel in order to disburse those funds. (ECF No. 19.) Respondent argues Petitioner's discovery motion should be denied because Petitioner has not established entitlement to discovery. (ECF No. 20.)

Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure . . . ." Good cause exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed" show he is entitled to habeas relief. *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997). On the other hand, "[c]onclusionary allegations are not enough to warrant discovery under Rule 6 of the Federal Rules Governing Section 2254 Petitions; the petitioner must set forth specific allegations of fact. Rule 6 . . . does not authorize fishing expeditions." *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994).

Many of Petitioner's discovery requests were met when the State provided him with his state court records. (ECF No. 27.) Regarding the remainder of his requests—specifically, a copy of the motion to amend his state habeas application and video

5

recordings at the Austin Transitional Center on October 26 and October 29, 2020—this evidence was not available to the state habeas court, and therefore this Court cannot consider it on federal review. See Cullen v. Pinholster, 563 U.S. 170, 181-82 (2011) (explaining that federal review "is limited to the record that was before the state court."); Shore v. Davis, 845 F.3d 627, 632 (5th Cir. 2017) (per curiam). Accordingly, Petitioner's motion for discovery is denied. Finally, because Petitioner's request for funding and appointment of counsel is also aimed at admitting evidence that was not part of the state habeas record, it is also denied.

2. Due Process (claims 1-4)

In Petitioner's first four claims, he argues he was denied due process rights during his parole revocation hearing. Specifically, he argues the revocation of his parole was based solely on hearsay testimony; he was unable to question adverse witnesses or subpoena evidence and recordings; he was arrested without probable cause; and he was subjected to the same parole violation description twice.

A parolee is constitutionally entitled to certain due process protections before a state may revoke his parole. Morrissey v. Brewer, 408 U.S. 471, 487-488 (1972). But a parole revocation hearing is not a criminal prosecution, and "the full panoply of rights due a defendant in such a proceeding does not apply[.]" Id. at 480. Nevertheless, the Due Process Clause requires certain "minimal safeguards" to protect the limited liberty interest at stake in a parole revocation hearing. Those safeguards include the right to: (1) written notice of the alleged parole violations; (2) disclosure of the evidence against the parolee; (3) an opportunity to be heard in person and present witnesses and

6

documentary evidence; (4) cross-examine and confront witnesses unless there is good cause to disallow confrontation; (5) a neutral decision maker; and (6) a written statement as to the evidence relied upon and the reasons for revoking parole. *Id*. at 480, 489; *see also Meza v. Livingston*, 607 F.3d 392, 404 (5th Cir. 2010). Moreover, the inquiry is narrow and should be flexible enough to consider evidence of letters, affidavits and other materials that would not be admissible in an adversarial criminal trial. *Id*. The right of confrontation and cross examination afforded a defendant at revocation hearings is qualified and can be limited for good cause. *Id*.

Petitioner's state habeas record shows the following factual background. On November 4, 2020, Petitioner's Parole Officer (PO) Daniel Rosenbloom, issued a Violation Report alleging Petitioner had violation two rules on October 29, 2020: Rule 2, Offense Against State Laws; and Rule 1, Follow instructions from my Parole Officer. (ECF No. 22-15 at 7-10.) A warrant was issued on November 5, 2020. (*Id.* at 11-12.)

An initial preliminary hearing was held on November 24, 2020, but was continued to December 11, 2020, after Petitioner expressed having homicidal thoughts against PO Rosenbloom and PO Larry Sotelo. (ECF No. 21-1 at 8.) At the December 11 preliminary hearing, Petitioner was appointed counsel over his objections based on his IQ on file and his on-going homicidal thoughts against PO Rosenbloom and PO Sotelo. (*Id*. at 8-9.) Petitioner's counsel then objected to the admission of PO Sotelo's affidavit, arguing Petitioner had a right to confront the witness. The Hearing Officer overruled the objection, stating PO Sotelo appeared at the hearing and was subject to examination, but noted that the affidavit would have no evidentiary weight. (*Id.* at 9.)

Regarding the alleged rule violations, PO Sotelo testified to the following. Around 5:00 a.m. on October 29, 2020, Sotelo found Petitioner harassing a woman waiting to submit a urinalysis. PO Sotelo told Petitioner to leave and Petitioner "became belligerent," got into PO Sotelo's face, and told him he did not have to follow his instructions, saying "You're not shit" and that he was going to "fuck him up." When PO Sotelo left the area to diffuse the situation, Petitioner followed him into the parole office area of the halfway house. PO Sotelo told Petitioner to leave but Petitioner again threatened him, stating that he was going to "fuck him up" and that he "didn't care if he caught another charge for fucking him up." PO Sotelo testified that Petitioner smelled of alcohol and told Sotelo he was drunk. Petitioner declined to testify at the preliminary hearing. The Hearing Officer concluded there was probable cause to believe Petitioner had violated at least one of the rules and set the matter for a Revocation Hearing. (*Id.* at 11-13.)

The Revocation Hearing was held on December 22, 2020, and Petitioner was again appointed counsel. The Preliminary Hearing and Report was admitted into evidence. PO Sotelo was present and confirmed his testimony from the preliminary hearing. The Hearing Officer asked Sotelo clarifying questions, to which Sotelo testified that the urinalysis room is approximately thirty feet from the parole office at the Austin Transitional Center, and that Petitioner had entered the parole office three different times that morning. The first time, Petitioner was there for about two to three minutes. The whole time he was in the office, he was cursing and making aggressive statements. PO Sotelo told Petitioner to leave multiple times; Petitioner would leave but came back a second time and third time. On each occasion, he came back cursing and making threats.

PO Sotelo testified that he felt threatened by Petitioner and really thought Petitioner was going to do something. PO Sotelo called the Austin Police Department, but they did not come by immediately. PO Sotelo did not know if there was any video footage of the incident and had not seen any. PO Sotelo did not file an incident report.

Petitioner testified that what PO Sotelo said was not true. This incident did not occur on October 29, 2020, but on October 26, 2020, because Petitioner always sees his PO on Tuesday. He testified he saw PO Rosenbloom and PO Carr after the incident, and they told him "You know we can body slam you, right?" Petitioner testified he is not stupid and would not make threats to people who could lock him up.

Petitioner further testified that he was just trying to talk to the female resident about the water fountains when PO Sotelo quickly snapped at him that he was going to write Petitioner up for fraternizing. Petitioner admitted to talking back to PO Sotelo but denied cursing at or threatening Sotelo, and testified he did not follow Sotelo into the parole office area. Petitioner was completely surprised when he was arrested, and while he had hard feelings towards POs Rosenbloom and Sotelo, he has forgiven them. (ECF No. 21-2 at 11-12.) On December 28, 2020, the Board of Pardons and Paroles (BPP) voted to revoke Petitioner's parole. (ECF No. 22-15 at 34-35.)

Petitioner claims his revocation hearing violated his right to due process because (a) the only evidence supporting the revocation was PO Sotelo's "hearsay" testimony; (b) he was not allowed to cross-examine PO Carr and the woman from the incident, nor could he examine the video footage from the incident; (c) there was no probable cause for his arrest because the pre-revocation warrant was based on vague and ambiguous

allegations and, at the November 24 hearing, the hearing officer concluded Petitioner had not violated the rules; and (d) on November 24, Petitioner was found to have not violated Rule 2 but then, on December 11, he was found to have violated Rule 2.

The Texas Court of Criminal Appeals (TCCA) summarily denied Petitioner's state application for habeas corpus relief. Petitioner fails to demonstrate the state court's disposition of his claims constituted a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C.A. § 2254(d). Petitioner received written notice of the alleged parole violations and a disclosure of the evidence against him; he had an opportunity to be heard in person, to present witnesses and documentary evidence, and to cross-examine and confront witnesses; his hearings were before a neutral decision maker; and he received a written statement as to the evidence relied upon and the reasons for revoking parole.

Petitioner's claim that PO Sotelo's testimony at the preliminary and revocation hearings was hearsay is incorrect. Sotelo had personal knowledge of the incident. Petitioner next claims he was unable to cross-examine PO Carr and the woman he allegedly harassed, but the record shows that, at the time of the hearings, Carr was no longer employed by the Parole Office and no one could locate any statement he made about the incident. The woman was also not available for cross-examination, and Petitioner offers nothing to rebut these factual findings.

Petitioner next claims that he was arrested without probable cause and then found innocent and then guilty of the same offense, the Rule 2 violation. Again, the factual record shows these claims are incorrect. Probable cause for an arrest was established in the violation report, as well as at the December 11 preliminary hearing. The November 24 hearing ended prematurely due to Petitioner's on-going homicidal thoughts against POs Rosenbloom and Sotelo. The Parole Office then amended the allegations to provide more notice for Petitioner to mount a proper defense. At the December 11 preliminary hearing, the hearing officer grouped these prior allegations together and explicitly stated they "were not addressed on the merits at the hearing convened on 12/11/2020." (ECF No. 21-1 at 9.) Accordingly, Petitioner has failed to show that he was denied due process during the parole revocation proceedings.

3. Parole Revocation—Ineffective Assistance of Counsel (claim 5)

Petitioner also argues his right to effective assistance of counsel, or in the alternative, self-representation, was violated when his hearing counsel failed to investigate witnesses, subpoena and review the video recordings, and then cross-examine PO Sotelo during either the preliminary or revocation hearing.

Under certain circumstances, indigent persons may have a right to appointed counsel in a parole or probation revocation setting. *See Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973) (holding the need for counsel in the informal revocation context should be decided on a case-by-case basis, rather than by an inflexible per se rule). The record shows Petitioner was appointed counsel. The Court assumes, then, that Petitioner had a Sixth Amendment right to effective counsel at his parole revocation hearing. *Strickland v.*

*Washington*, 466 U.S. 668 (1984), sets forth a two-part test to establish an ineffective assistance of counsel claim under the Sixth Amendment. First, the reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690. In making this judgment, the Court must determine whether, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id*. Second, if such an error was made by counsel, the Court must determine whether the error was prejudicial to the defendant. *Id*. at 661-62.

Petitioner's claims that his counsel was ineffective are not supported by the record. Petitioner claims his counsel failed to investigate and interview PO Carr and the woman who witnessed the incident with PO Sotelo, but does not allege how his counsel, who was appointed solely for purposes of the hearing, would have been able to do this. Further, there is nothing in the record to support Petitioner's allegation that there were video recordings of the incident, and thus his counsel cannot be deficient for failing to subpoena such footage. Petitioner also alleges his counsel was deficient by failing to cross-examine PO Sotelo but the Hearing Officer at the revocation hearing asked Sotelo several clarifying questions, and Petition does not state how he was prejudiced by his counsel's failure to engage in further cross-examination.

Petitioner's desire for self-representation seems to stem from his belief that he was deemed not responsible for the rule violations at the November 24 hearing, when he was pro se, but then found responsible at the December 11, when he had counsel. As noted above, no findings were made at the November 24 hearing since it ended

prematurely. Further, the Hearing Officer appointed counsel for the December 11 and December 22 hearings based on Petitioner's IQ and his history of having homicidal thoughts towards POs Sotelo and Rosenbloom.

The record before the Court shows that the Hearing Officers at the preliminary and revocation hearings found PO Sotelo's testimony to be persuasive and credited his testimony over Petitioner's. The state habeas court found no error in this, and Petitioner has failed to show that the state habeas court's application of *Strickland* to this claim was unreasonable. This claim is denied.

4. Timeliness of Parole Revocation Hearing (claim 7)

In the final claim in his federal habeas petition, Petitioner argues he was denied due process when the Parole Division failed to conduct a revocation hearing in a reasonable amount of time, i.e., within forty days after his arrest for the alleged violations. (ECF No. 1-1 at 5.) Respondent argues Petitioner failed to exhaust this claim in state court, and it is therefore defaulted from federal habeas review.

Before seeking review in federal court, a petitioner must first present his claims in state court and exhaust all available state court remedies through an adjudication on the merits. See 28 U.S.C. § 2254(b)(1)(A). The AEDPA exhaustion requirement is satisfied if the substance of the federal habeas claim was presented to the highest state court in a procedurally proper manner. *Baldwin v. Reese*, 541 U.S. 27, 29-32 (2004); *Moore v. Cain*, 298 F.3d 361, 364 (5th Cir. 2002). In Texas, the exhaustion requirement is satisfied if the substance of the claim was presented to the TCCA in a procedurally proper manner

either through a PDR or through an application for writ of habeas corpus. *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998).

When a petitioner "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,'" a petitioner's claim is procedurally defaulted from federal habeas review. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)). The only way for a petitioner to overcome a procedural default is to show cause for the default and resulting prejudice, or to demonstrate that the federal court's failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750-51 (1991); *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004).

Petitioner did not raise this claim in his state habeas application. Should this Court now require Petitioner to return to state court to satisfy the exhaustion requirement, the TCCA would find the claim procedurally barred under the abuse of the writ doctrine found in Article 11.07 § 4 of the Texas Code of Criminal Procedure. Under that doctrine, the state habeas court would not consider the merits of Petitioner's second state habeas application unless he could show either the legal or factual basis of his current claims was not available when he filed his prior state habeas application, or that, but for a violation of the U.S. Constitution, no rational juror could have found Petitioner guilty beyond a reasonable doubt. TEX. CODE CRIM. PROC. ANN. art. 11.07(4)(a)(1), (2).

In response, Petitioner does not argues he presented this ground through a motion to amend that was executed on October 31, 2021, just ten days after he filed his original

state application for habeas corpus. Even assuming this is true, there is no record this motion to amend was forwarded to the TCCA or that the TCCA considered it when denying Petitioner's state habeas application. The Court is therefore not persuaded that Petitioner properly presented this claim to the TCCA and concludes it is procedurally defaulted from federal habeas review.[1]

5. Evidentiary Hearing

In his federal petition, Petitioner states he is seeking an evidentiary hearing to develop the factual basis of his constitutional claims. The criteria for holding an evidentiary hearing are as follows:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A) the claim relies on—
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2)

Under Rule 8 of the Rules Governing § 2254 Cases, even if a petitioner overcomes the obstacles in § 2254(e)(2), the Court still has discretion as to whether to grant an evidentiary hearing. *Murphy v. Johnson*, 205 F.3d 809, 815 (5th Cir. 2000). In

---

[1] Even if this claim were exhausted, as Petitioner contends, it is nonetheless meritless because violations of state law are not a basis for federal habeas corpus relief. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

determining whether to grant a hearing, "the judge must review the answer and any transcripts and records of state-court proceedings to determine whether an evidentiary hearing is warranted." *Richards v. Quarterman*, 566 F.3d 553, 562-63 (5th Cir. 2009) (cleaned up). If the Court has sufficient facts to "make an informed decision regarding the merits of a claim," it may deny the petitioner an evidentiary hearing. *Murphy*, 205 F.3d at 816. When the state court record "precludes habeas relief," a district court is "not required to hold an evidentiary hearing." *Schriro*, 550 U.S. at 464 (2007).

Petitioner's allegations are insufficient to warrant an evidentiary hearing. Moreover, the state habeas record shows Petitioner is not entitled to relief; therefore, no evidentiary hearing is warranted. This motion is denied.

### 6. Remaining Motions

Petitioner has two remaining motions pending. First, he moves for partial summary judgment on his claims that he was arrested without probable cause and that he was subjected to the same violation twice. The Court has already concluded these claims are without merit. This motion is denied. Petitioner next moves for free copies of his certain pleadings in the instant case. Petitioner is not entitled to free copies. *See Harless v. United States*, 329 F.2d 397, 398-99 (5th Cir. 1964) ("The statutory right to proceed in forma pauperis does not include the right to obtain copies of court orders, indictments, and transcript of record, without payment therefor, for use in proposed or prospective litigation.") This motion is also denied.

## IV. Certificate of Appealability

A petitioner may not appeal a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant. *See Miller-El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where a district court rejects a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court rejects a habeas petition on procedural grounds without reaching the constitutional claims, "a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El*, 537 U.S. at 327 (citing *Slack*, 529 U.S. at 484). Accordingly, the Court will not issue a certificate of appealability.

It is therefore **ORDERED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DENIED**;

It is further **ORDERED** that Petitioner's Motion to Amend (ECF No. 32) is **GRANTED**;

It is further **ORDERED** that Petitioner's remaining pending motions (ECF Nos. 11, 19, 31, 34) are **DENIED**; and

It is finally **ORDERED** that a certificate of appealability is **DENIED**.

SIGNED this 6th day of June, 2023.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE